### ECKER v. COTTRELL.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

CONTRACTS—BREACH—MEASURE OF DAMAGES.

By contract, defendant rented his farm to plaintiff during a certain year; defendant agreeing to furnish certain things, such as seed, etc., and plaintiff agreeing to do all the work on the farm, to work the road tax, and to pay in part for necessary apple and quince barrels; and the proceeds of the farm were to be divided equally. *Held*, that the measure of damages to which plaintiff was entitled for a breach is the value of the contract, i. e. what such privilege of occupying and working the farm is worth, in view of the conditions of the contract and the contingent profits.

Appeal from Monroe county court.

Action begun by John H. Ecker against Hammond A. Cottrell for breach of contract. Defendant dying, Sarah A. Cottrell, his executrix, was substituted. From a judgment in favor of plaintiff, and an order denying a new trial moved for on the minutes, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Wm. M. Richmond, for appellant.
George F. Slocum, for respondent.

GREEN, J. This action was commenced in the municipal court of Rochester, and was brought against Hammond A. Cottrell. The plaintiff obtained a judgment in his favor in that court. An appeal was taken therefrom to the county court of Monroe county. In his notice of appeal, the defendant demanded a new trial in that court. After such appeal, Hammond A. Cottrell died, leaving a last will and testament. wherein he appointed this defendant his executrix, who duly qualified as such, and was substituted as defendant herein. A new trial was had in the county court of Monroe county, which resulted in a verdict in favor of the plaintiff for $114.43. A motion for a new trial on the minutes of the court was made and denied. Judgment was then entered, and this appeal thereafter taken.

This action is brought upon the following written contract:

"Article of Agreement for Renting Farm to Mr. Ecker.

"January 4, 1890.

"I, H. A. Cottrell, of the first part, do agree to rent my farm to J. H. Ecker, of the second part, for the year 1890, according to the following stipulations:

J. H. Ecker, of the second part, is to do all the work on said farm the said year; also, work the road tax,—and is to receive one-half of the proceeds of the farm for the year 1890, except from the piece of ground between the house and barn, which I reserve for my own use. J. H. Ecker, of the second part, is to cultivate said piece of ground for me. H. A. Cottrell, of the first part, is to furnish all seed to be sown, and manure to be used; also, horse and tools to do the work with, and keep them in repair; also, feed for the horse. J. H. Ecker, of the second part, is to do all work according to my dictation; also, is to pay for one-half the apple barrels for said year; also, quince barrels. As soon as any crops are sold, and cash received, J. H. Ecker is to receive his one-half share of the sale. J. H. Ecker is to do all the pruning, and keep fences in repair, and I am to furnish all material required. I also reserve the row of raspberries on the west side the blackberries for my own use. H. A. Cottrell, of the first part, is to have sufficient hay to keep the horse and cow for the year 1890, from the undivided half left in the barn.

"H. A. Cottrell.<br>"John H. Ecker."

The plaintiff alleges in his complaint the making of such agreement, that he was at all times ready and willing to perform the covenants and conditions thereof upon his part, and that the defendant, in violation of his covenants of the contract, refused to allow plaintiff to fulfill upon his part. He further alleges in his complaint that the proceeds of the farm for the year 1890 were upwards of the sum of $1,000; that, by reason of defendant's preventing plaintiff from performing such contract, plaintiff had suffered damages to the amount of $500; and for that amount he demanded judgment, with costs. The defendant, by his answer, admitted the making of the contract. Denied that the plaintiff was ready and willing to perform the covenants and agreements therein contained, on his part, or ever offered to perform them, or any of them, under the direction of the defendant, and in accordance with the contract. Alleged that he frequently urged the plaintiff to carry out and perform these covenants and agreements aforesaid, but that the plaintiff neglected and refused so to do; that the defendant, by reason of such neglect and refusal, was subjected to great expense in employing and paying others to work the farm; that the plaintiff performed the work he attempted to do upon the farm so unskillfully that defendant suffered damage thereby, and was subjected to great loss. Denied that without cause he refused to allow plaintiff to work upon this farm, and to perform the conditions of the contract. Alleged that he constantly importuned the plaintiff to perform his part of the contract, and that plaintiff constantly neglected and refused so to do. Denied that the proceeds of the farm for the year in question were upwards of $1,000, or that the plaintiff's share amounted to $500. Alleged that the products of the farm were insufficient to pay the amount which defendant was compelled to and did pay for the seed, material, and labor necessary to their production in that year. And denied that there was any sum due plaintiff for his share in the proceeds of the farm for that year. The evidence is uncontradicted that shortly after the execution of the contract the plaintiff entered into the possession of the farm under the terms of the contract, and performed work upon the same in the performance of the contract; that shortly thereafter he ceased work, and claimed that Cottrell had demanded that the plaintiff give security for the faithful performance of the contract;

that thereafter Cottrell took possession of the farm, and worked the same himself for that year; that it became necessary for him to procure help, which he did, at an expense of about $230; that the entire crop produced upon the farm for that year was of the value of only $303.04. Upon the trial the court construed the contract as one for work, labor, and services, and allowed evidence in behalf of the plaintiff to be given, under objection and exception of defendant, of the amount which plaintiff had been enabled to earn during the balance of the year, from the date of the contract to such time as the jury might say would be necessary for the plaintiff to be employed upon the fruit farm. Upon the question of the measure of damages, the learned court charged:

"Now, what were those damages? What he was going to get under the contract, and what he would have gotten if it had been completed, was one-half of the crop. As near as we can figure, one-half of the crop amounted to $151.52. That was produced, not by the labor of the plaintiff alone, but by the labor of some one whom Mr. Cottrell had hired in the plaintiff's place, whose wages Mr. Cottrell paid. But, if Mr. Ecker had been given an opportunity to work, this crop would have resulted from Mr. Ecker's labor. By reason of his discharge, he did not have a full opportunity to work all that season. $151.52 would have been what he would have made if he had stayed upon the farm. From that we must deduct, in fairness to Mr. Cottrell, whatever he actually earned during the period when, if the contract had been carried out, he would have had to stay upon the Cottrell place."

After the charge, the defendant's counsel asked the court to charge:

"That the value of the contract to the plaintiff might have been nothing, and could only have been determined by the amount produced, half of which was due the plaintiff, if a breach occurred, less the cost of producing the whole. By the Court: I think that has been quite thoroughly stated to the jury. I think that is substantially the language of the court of appeals in the case reported in the 39 N. Y. (Exception by defendant's counsel.)"

It is not clear just what was intended by the learned court in answering this request to charge. Certainly the main charge, as made, was not as requested; but in such general charge the rule of damages was stated to be that rule which would be applicable upon a contract for work, labor, and services. So that, as appears, the minds of the jurors may have been left in some doubt and obscurity as to what the rule of damages was by which they were to be governed in the consideration and decision of the questions submitted to them. In construing this contract, the court should give effect to the legal relations of the parties, as defined and established by the terms employed by them in expressing their intention. The first words of the instrument are:

"Articles of Agreement for Renting Farm to Mr. Ecker.
　　　　　　　　　　　　　　　　　　　　"January 4, 1890.
"I, H. A. Cottrell, of the first part, do agree to rent my farm to J. H. Ecker, of the second part, for the year 1890, according to the following stipulations."

By these stipulations, Ecker was to do all the work on the farm, work the road tax, do all the pruning, and keep all the fences in repair; Cottrell was to furnish seed to be sown, manure to be used, horse and tools with which to do the work, and materials to keep the fences in repair; each to receive one-half of the proceeds of the farm. Whether this contract be construed as a lease, or as a contract of hir-

ing, or as a special contract, or by whatever name it may be denominated, the pecuniary result would have been identical, had each party performed the covenants therein contained, and to be performed on the part of each. But this should not be held conclusive, in arriving at the intention of the parties. The legal consequences which might result from a breach of the covenants therein may have actuated, and presumptively did actuate, the contracting parties to express their intentions in the precise terms employed by them in the contract. An examination of the terms used in the contract clearly indicates an intention of the parties to contract for the performance of a specific undertaking, each to contribute and furnish towards that undertaking the share and proportion as fixed by the terms of the contract; and each was to receive for his share in the venture an undivided one-half of the amount received from the products of the farm. The amount which each would receive was not and could not be fixed by the contract. That depended upon the success or failure of the venture, which could only be determined from the amount produced by the farm, and the amount of expenditure incident to its production. The returns were therefore contingent and speculative. And if this plaintiff was, as he claimed, unjustly prevented from performing the covenants upon his part, and prevented from performing the specific thing which had been contracted to be done, and if, after being thus prevented, he found something to do of a different nature from that contracted for, the amount thus earned could not be allowed in mitigation of the damages for the breach of his contract by the other party. There is enough in the difficulty of applying such a rule to discard the attempt to apply it. This is well illustrated by the case at bar. The plaintiff was allowed to show that possibly it might have taken all his time until the end of the year 1890 to do the work under the contract. He was also allowed to give evidence tending to show that possibly there would be nothing to do upon the farm after the month of September or October. It appears from the evidence that, under the rule of damages applied by the learned court in this case, if the plaintiff had been charged with what he had earned after the month of October it would have been sufficient, or nearly so, to balance the amount to which he would have been entitled under the contract, without allowing anything for expenditures in the performance of the contract. The contract in question is similar to the one considered and construed in Taylor v. Bradley, 39 N. Y. 129, and the rule of damages as there laid down should govern in the construction of the contract in question. After a review of many decisions, the learned court says, at page 144:

"It was, in view of the decisions, a special contract, partaking somewhat of the nature of an adventure, and entitling the party to the chance of profit or benefit derivable therefrom. * * * To my mind, the only rule which can be prescribed, and the only rule which will do justice to the parties, is that the plaintiff is entitled to the value of his contract. He was entitled to its performance. It is broken. He is deprived of his venture. What was this opportunity which the contract had apparently secured to him worth? To reap the benefit of it, he must incur expense; submit to labor, and appropriation of his stock. His damages are what he lost by being deprived of his chance of profit. * * * How much is such a privilege (whether it be called a "lease" or "right of occupation," or by whatever name) worth? Any an-

swer to that question necessarily brings into the mind of any one proposing to buy the privilege all that it will cost him, in time, labor, money, or other sacrifice, to enter upon performance and perform the contract on his part, and also all the uncertainty as to the result in producing value to him in return. Such privilege may be worth nothing. It may be worth more than the labor and expense attending it. I think it is a proper subject for proof in that form."

If I have properly construed this contract, then the construction given by the learned county judge was incorrect, and the rule of damages, as applied by him, is not the rule to be applied to the contract under review. It therefore follows that the judgment and order should be reversed, and a new trial ordered, with costs to abide the event. So ordered. All concur.